

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Aaron Flores,

        Plaintiff,

–v–

Negril Village, Inc., *et al.*,

        Defendants.

15-cv-2658 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

On April 6, 2015, Aaron Flores filed a complaint in the Southern District of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Art. 19 § 650 *et seq.* Flores claimed that his employer, a Caribbean restaurant, failed to pay legally required overtime and spread-of-hours wages; improperly paid employees on a salaried instead of hourly basis; and failed to give employees required statements and notifications.

On September 4, 2015, Flores filed a motion to conditionally certify the suit as a collective action under 29 U.S.C. § 216(b). Dkt. No. 13. On October 22, 2015, just prior to Defendants' deadline to respond to the motion for conditional certification, the parties notified the Court that they had reached a settlement. Dkt. No. 22. The parties submitted the settlement for the Court's review on November 9, 2015, along with Plaintiff's memorandum of law setting forth his views on why the settlement would be fair. Dkt. No. 24. Although the Court finds the settlement broadly to be fair and reasonable, its approval is subject to a number of caveats discussed below. Approval of the settlement is therefore denied, with the understanding that if the parties address the Court's concerns and resubmit, the settlement will be approved.

1

## DISCUSSION

FLSA suits cannot be privately settled. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). In keeping with FLSA's purpose of ensuring workers "a fair day's pay for a fair day's work," a settlement in a FLSA case must be approved either by a court, or by the Department of Labor. *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). This action therefore cannot be dismissed with prejudice until the Court has satisfied itself that the resolution proposed by the parties is "fair and reasonable." *See, e.g., Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A reasonable agreement must "reflect[] a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-cv-7002, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).

In order to evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate "the bona fides of the dispute." *Id.* (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). At minimum, this includes information on "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). The parties must articulate their remaining points of disagreement to the Court. *Mamani*, 2014 WL 2971050, at *1. If they disagree over the calculation of wages owed, they "must provide each party's estimate of the number of hours worked and the applicable wage." *Id.* (internal quotation mark omitted). In reviewing the reasonability of attorney's fees requested, the Court looks to "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." *Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13-cv-6667, 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015) (quoting *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014)).

The settlement's payment to Mr. Flores broadly appears to be fair and reasonable. The Court is satisfied that an arms-length negotiation took place. *See* Pl.'s Mem. at 4. Plaintiff's memorandum in support of the settlement includes an account of Defendants' maximum exposure and the litigation risk involved. *Id.* at 3–4 & Ex. B. The settlement's stated recovery of 100% of Plaintiff's back pay and 70.33% of Defendants' total potential liability represents a fair and reasonable compromise for the risks detailed in the memorandum. *See id.*

The Court appreciates the submission of the parties' Exhibit B, which lays out the numbers and math used to calculate the payments owed to Plaintiff in a clear and concise fashion. This type of documentation is adequate to enable the Court to evaluate the fairness of the settlement amount. However, the records contained in Exhibit B appear to be incomplete and cut off after the first page. The Court cannot approve the settlement until the parties submit the full records for Plaintiff's hours worked and wages owed. *See Gaspar v. Personal Touch Moving*, No. 13-cv-8187, 2015 WL 7871036, at *3 (S.D.N.Y. Dec. 3, 2015).

The Court also has reservations about three aspects of the settlement which prevent it from being approved at this time. In *Cheeks*, the Second Circuit highlighted *Lopez* as an example of a case where the district court appropriately rejected a proposed settlement because it contained unacceptable terms. 796 F.3d at 206. Specifically, the appeals court observed that

> the proposed settlement agreement included (1) 'a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA;' (2) an overbroad release that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues;' and (3) a provision that would set the fee for plaintiff's attorney at 'between 40 and 43.6 percent of the total settlement payment' without adequate documentation to support such a fee award.

*Id.* (alteration in original) (quoting *Lopez*, 96 F. Supp. 3d 170). All three of these problems are present in the settlement currently before the court.

First, the Court is concerned about the settlement's confidentiality and non-disparagement provisions. Such clauses can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants

3

and others), who can then use that information to vindicate their statutory rights. *Lopez*, 96 F. Supp. 3d at 178–79; *see also Dees*, 706 F. Supp. 2d at 1242. The confidentiality provision in the proposed settlement states that Flores "agrees not to publish, disseminate, provide interviews or discuss the terms and conditions of this Settlement with anyone or any entity; other than as required by law or any taxing authorities." Proposed Settlement at 3. The non-disparagement provision states that the parties "shall not make any statement, written, oral or electronic, which in any way disparages the opposing party." *Id.* Plaintiff's memorandum of law in support of the proposed settlement contains no discussion of these clauses.

Although the agreement in this case does not contain some of the extreme confidentiality measures seen in *Lopez* (keeping the settlement terms off the public docket and providing for liquidated damages in the event of a confidentiality violation), 96 F. Supp. 3d at 174, these provisions nonetheless seem potentially overbroad. The district court in *Lopez* rejected a non-disparagement clause of similar scope as contrary to the remedial aims of FLSA. *Id.* at 178–81. In submitting a revised settlement agreement, the parties have several choices. They may remove the confidentiality and non-disparagement provisions, or narrowly tailor them and provide support for the proposed provision. *See id.* at 181. Alternatively, they may keep the provisions but submit authority and argument supporting the proposition that the clauses included in the proposed agreement are fair and reasonable.

Second, the release from liability is too broad. A FLSA settlement cannot offer the defendant a sweeping release from liability that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014). However, the release in this case appears to do just that. The settlement agreement states that Plaintiff

> hereby releases and forever discharges all of the Defendants . . . from any and all claims . . . of any and every kind, nature and character, known or unknown, which . . . Plaintiff . . . ever had, may now have, or hereafter can, shall or may have . . . from the beginning of the world to the date of this Settlement Agreement.

Proposed Settlement at 2. The Court cannot "countenance employers using FLSA settlements to erase all liability whatsoever in exchange for . . . payment of wages allegedly required by statute." *Lopez*, 96 F. Supp. 3d at 181. The Court will not approve a settlement agreement containing such a provision.

Third, Plaintiff's request for attorneys' fees is not adequately supported. Courts evaluating the fairness of FLSA settlements also consider whether a proposed award of attorneys' fees is reasonable. *Wolinsky*, 900 F. Supp. 2d at 336. A proper fee request in this circuit "entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Courts will deny unsubstantiated requests for FLSA fees, and will decrease requested fees "if the hours billed are unreasonable or the hourly rate too high." *Lopez*, 96 F. Supp. 3d at 182. Although Plaintiff's memorandum mentions the hourly rates charged by Plaintiff's counsel, no billing records documenting the expenditure of time on this case are included. "Especially problematic is the fact that counsel's submission touts the fact that the proposed fee award is a compromise from Plaintiff's lodestar in this case . . . while providing no information about how that lodestar was calculated." *Id.* at 181–82 (internal quotation marks omitted). The Court further notes that the amount of attorneys' fees and costs requested in this case, $12,500, is more than 40% of the total payout of $30,000. In *Cheeks*, the Second Circuit flagged a settlement provision that "would set the fee for plaintiff's attorney at 'between 40 and 43.6 percent of the total settlement payment' without adequate documentation to support such a fee award" as not fair and reasonable. 796 F.3d at 206. The Court therefore cannot approve Plaintiff's counsel's request for fees without additional documentation.

\*   \*   \*

For the reasons explained above, the Court cannot approve the settlement as currently proposed. The parties are hereby ORDERED to meet and confer about the settlement, and to file a revised settlement proposal or a joint letter updating the Court on the status of settlement negotiations no later than January 1, 2016.

SO ORDERED.

Dated: Dec 11, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge